*582 OPINION.
Love :
The sole question in this proceeding is whether the amount of $55,992.38, the contract price of the goods which the petitioner alleges were rejected within the fiscal year ended September 30, 1920, should be included in the petitioner’s gross income for that year.
It should be noted at the outset that the total contract price of the goods was $58,023.19, while the goods charged back amounted to $55,992.38. In view of the fact, however, that it is alleged by the petitioner that the amount of $55,992.38 was erroneously included in its taxable income for the year in question and that the respondent in his answer denied he committed error in so doing, we presume that with respect to the difference of $2,030.81, there is no dispute as to those goods or as to the treatment of their selling price. We will confine our inquiry, therefore, to the question as to whether the goods charged back by the petitioner should or should not be included in its closing inventory for the fiscal year 1920.
After entering into the contract for the sale of the goods in question and sometime during the fiscal year 1920, the petitioner in pursuance of its bookkeeping methods, accrued on its books the contract price thereof. However, the petitioner in making its return for the year in question deducted from gross sales the amount of the goods *583 which it alleges were rejected, and returned those goods to inventory. In support of its action in this respect, the petitioner takes the position that where a contract has been entered ipto for the sale of goods on sample during the taxable year and the goods shipped to apply on the contract have been rejected by the vendee and thrown back on the hands of vendor before the close of the taxable year, the vendor, being on the accrual basis, should deduct from gross sales the price of any goods returned. The respondent agrees with this contention but he urges that the goods in question were not rejected and that the petitioner did not consider them as rejected.
Whether the petitioner considered the goods as rejected is not, in our opinion, controlling. The sales agreement clearly indicates that the parties thereto contemplated that the goods might be rejected. Therefore, if, as a matter of fact, the goods in question were rejected prior to the close of the fiscal year, it is clear that they should be included in petitioner’s inventory for the reason that petitioner had only a cause of action against the buyer, the outcome of which was, of course, uncertain and, consequently, not accruable.
By the terms of the sales agreement the buyer had thirty days within which to reject the goods. On September 25, 1920, B. Freeman & Co. wrote to petitioner’s agent, complaining about the quality of the goods and stated:
Unless you are agreeable to getting together on the lines outlined above, in an effort to sift the good from the bad, there is only one position open for us, and that is we must ask you to immediately call for the return of all of the hundred cases of merchandise.
It will also be observed that on December 17, 1920, petitioner was advised by its agent that B. Freeman & Co. declined to accept the goods as good delivery or to pay for them.
Considering the letter of September 25, 1920, in the light of subsequent events, we are of the opinion that by that letter B. Freeman & Co. intended to exercise and did exercise the option to reject the goods in question as provided for in the sales agreement.
The goods in question having been rejected prior to the close of the fiscal year, we conclude that the respondent erred in determining that the amount of $55,992.38 should be included in petitioner’s income for the fiscal year ended September 30, 1920.
Judgment will be entered on 15 days' notice, under Rule 50.
Considered by TRttssell, Smith, and Littleton.